MARYBETH GUARISCO                          CIVIL ACTION

VERSUS                                     NO: 18-7514

BOH BROTHERS                               SECTION: "J"(3)
CONSTRUCTION CO., LLC AND
ILLINOIS NATIONAL
INSURANCE COMPANY

## ORDER AND REASONS

Before the Court is a *Motion to Remand* **(Rec. Doc. 7)** filed by Plaintiff,

Marybeth Guarisco, and an opposition thereto **(Rec. Doc. 9)** filed by Defendant, Boh

Bros. Construction Co., LLC. Plaintiff filed a reply **(Rec. Doc. 13)**, to which

Defendant filed a sur-reply **(Rec. Doc. 16)**. Having considered the motion and legal

memoranda, the record, and the applicable law, the Court finds that the motion

should be **DENIED**.

## FACTS AND PROCEDURAL HISTORY

This case involves the Southeast Louisiana Drainage Project ("SELA"), a

federally-funded enterprise cosponsored by the Sewerage and Water Board of New

Orleans ("SWB") and the United States Army Corps of Engineers ("the Corps"). The

SELA Project involves extensive construction at multiple sites throughout Orleans,

Jefferson, and St. Tammany parishes and is designed to improve flood control and

drainage in urban areas. On January 23, 1997, the federal government entered into

a Project Cooperation Agreement with SWB outlining the roles and responsibilities

of the Government and SWB during construction of the Orleans Parish SELA Project segments. The Agreement specifically states that "…all work on the Project … shall be exclusively within the control of the Government." Defendant asserts that on November 26, 2013, the Corps issued Solicitation No. W912P8-14-R-001 seeking competitive bids for the Louisiana Avenue SELA Project segment. Defendant was the successful bidder selected by the Corps to act as general contractor on the Project. (*See* Rec. Doc. 1-4).

The instant case arises out of an automobile accident that occurred on April 7, 2017 at the intersection of Louisiana Avenue and Baronne Street in New Orleans, Louisiana—the site of the Louisiana Avenue SELA Project segment. Plaintiff alleges that Defendant had converted Louisiana Avenue's two river-bound lanes into a two-way street and negligently placed traffic control signs on the roadbed at the intersection, thereby causing Plaintiff's accident. On April 2, 2018, Plaintiff filed suit against Defendant and its insurance carrier, Illinois National Insurance Company, in the Civil District Court for the Parish of Orleans. Defendant timely removed the case under Title 28 U.S.C. § 1442.

## **PARTIES' ARGUMENTS**

Plaintiff urges the Court to find that Defendant has failed to prove its entitlement to Federal Officer Removal jurisdiction. (Rec. Doc. 7 at 1). Plaintiff first argues that Defendant has failed to establish that it is a "person" within the meaning of the statute. (Rec. Doc. 7-1 at 2). Plaintiff also asserts that Defendant has offered no evidence that it is the general contractor for the SELA Project at issue. (Rec. Doc.

7-1 at 3). Even if Defendant is the general contractor and qualifies as a federal contractor, Plaintiff asserts that Defendant abdicated its duty to warn motorists of traffic conditions on April 7, 2017, and there is no connection between Defendant's federal contractor status and its state law tort violation. (Rec. Doc. 7-1 at 4).

Plaintiff next argues that Defendant has shown no causal nexus between Plaintiff's state law negligence claims and Defendant's actions performed under a federal officer. (Rec. Doc. 7-1 at 4). Plaintiff emphasizes that Defendant (1) converted Louisiana Avenue's two river-bound lanes into a two-way street, (2) turned off the traffic control signal light at the intersection of Louisiana Avenue and Baronne Street, (3) failed to set the traffic control signal to its emergency setting, (4) failed to make the intersection a four-way stop, and (5) failed to erect signage indicating that traffic was flowing in opposite directions. (Rec. Doc. 7-1 at 5, 6). Acknowledging that Defendant placed a stop sign on the neutral ground, Plaintiff asserts that this placement nevertheless violated the traffic control and municipal safety standards of the State of Louisiana and the City of New Orleans. (Rec. Doc. 7-1 at 6, 7). Plaintiff goes on to state its opposition to Defendant's assertions that (1) the Corps had in place detailed plans and specifications pertaining to traffic control, which effectively removed all critical design choices from Defendant's discretion; (2) there was a Corps Quality Assurance representative onsite daily; and (3) that Defendant performed its work in accordance with the requisite plans and specifications. (Rec. Doc. 7-1 at 7, 8, 9, 10).

Plaintiff also contends that Defendant has failed to produce evidence to show that the traffic control system it implemented at the intersection of Louisiana Avenue and Baronne Street was at the direction of or mandated by a federal officer. (Rec. Doc. 7-1 at 10, 11). Finally, Plaintiff argues that Defendant's post-accident actions to correct the traffic control operation show that Defendant either was not acting under the direction of a federal officer or failed to follow the directions and mandates of that federal officer on the date of the accident. (Rec. Doc. 7-1 at 12, 13).

Defendant argues in opposition that the case was properly removed under the Federal Officer Removal Statute on the basis of the government contractor defense. (Rec. Doc. 9 at 1). Defendant challenges Plaintiff's assertion that it failed to show it was the general contractor on the Project at issue, noting that it attached the "Solicitation, Offer, and Award" to its Notice of Removal. (Rec. Doc. 9 at 4). Defendant also challenges Plaintiff's incorrect statement of law with respect to the right to removal under 28 U.S.C. § 1442, noting that the statute must be interpreted broadly in favor of removal. (Rec. Doc. 9 at 7). Defendant emphasizes that prior Eastern District of Louisiana cases involving SELA construction support Defendant's removal of the instant matter. (Rec. Doc. 9 at 10).

Defendant goes on to argue that it satisfies the standard for removal under the Federal Officer Removal Statute. (Rec. Doc. 9 at 11). First, Defendant argues that it clearly qualifies as a "person" under the statute. (Rec. Doc. 9 at 12). Next, Defendant contends that its implementation of traffic control measures was performed at the direction of the Corps, a federal officer. (Rec. Doc. 9 at 12). Defendant points to the

detail included in the specifications prepared by the Corps' hand-picked designer of record, the fact that no work could proceed on the traffic control systems until all submittals were reviewed and approved by the Corps' Contracting Officer, and the daily presence of a Quality Assurance representative at the worksite to observe Defendant's work and ensure it conformed with all plans and specifications. (Rec. Doc. 9 at 13-14). Third, Defendant argues that its traffic control measures implemented under federal supervision share a causal nexus with Plaintiff's claims arising out of the traffic accident. (Rec. Doc. 9 at 14). Defendant asserts that the Corps' oversight on the Project is extensive and steady and it has in place detailed plans and specifications regulating traffic control and coordination for the Project, which effectively remove all critical design choices from Defendant's discretion. (Rec. Doc. 9 at 15). Defendant emphasizes that in each of the numerous SELA cases that have come before the Eastern District of Louisiana, a causal nexus has been found based on the contractor's compliance with detailed SELA specifications. (Rec. Doc. 9 at 16). Finally, Defendant contends that it has stated a colorable federal defense related to its actions and Plaintiff's claims. (Rec. Doc. 9 at 17). Specifically, Defendant argues that it has satisfied the *Boyle* requirements for the government contractor defense. (Rec. Doc. 9 at 18-20).

In reply, Plaintiff argues that the Traffic Control and Coordination Plan submitted by Defendant as Exhibit 1 clearly demonstrates that Defendant was solely responsible for providing and maintaining traffic control, coordination, and maintenance. (Rec. Doc. 13 at 1). Plaintiff contends that Defendant was required to

prepare and submit a Traffic Control Device Plan that complied with specific requirements, coordinate traffic control and maintenance with the City of New Orleans, and have its own engineer with the requisite expertise design "site specific traffic control device plans" in coordination with the City of New Orleans. (Rec. Doc. 13 at 1-2). Plaintiff asserts that the contract tasked Defendant with monitoring traffic control devices on a daily basis and making appropriate changes. (Rec. Doc. 13 at 2-3). Thus, Plaintiff concludes that Defendant was not acting under color of federal law when it failed to adequately warn Plaintiff of traffic conditions on the date of the accident. (Rec. Doc. 13 at 3).

Defendant's sur-reply "address[es] numerous erroneous assumptions and representations asserted in Plaintiff's Reply Memorandum." (Rec. Doc. 16 at 1). Defendant clarifies that the Corps had sole control over the ultimate design choices for the Traffic Control Device Plan and the oversight of work to ensure compliance with the Corps' plans and specifications. (Rec. Doc. 16 at 1). Defendant notes that no local or state agency had any role in preparing the traffic control and coordination plans and specifications or overseeing Defendant's work. (Rec. Doc. 16 at 1-2). Defendant points to the affidavit of its Project Manager on the Louisiana Avenue Project to support its assertion that the Corps maintained a daily on-site presence for the purpose of overseeing Defendant's work. (Rec. Doc. 16 at 2). Defendant asserts that the secondary approval of the New Orleans Department of Public Works, Traffic Department mandated by the Corps' plans and specifications in no way affects the Corps' primary approval. (Rec. Doc. 16 at 2). Finally, Defendant argues that the

affidavit of Defendant's Project Manager shows that Defendant has a colorable federal defense. (Rec. Doc. 16 at 2). Specifically, Defendant emphasizes that the Corps provided a Traffic Control Device Plan prepared by its hand-picked designer of record, and Defendant opted to use this exceedingly detailed and precise plan. (Rec. Doc. 16 at 3). Defendant notes that the Traffic Control Device Plan specified the particular traffic control devices that Defendant was required to use and the precise location of every such device. (Rec. Doc. 16 at 3-4).

## LEGAL STANDARD

A defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of proving by a preponderance of the evidence that federal jurisdiction exists at the time of removal. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The jurisdictional facts supporting removal are examined as of the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Ambiguities are construed against removal and in favor of remand, because removal statutes are to be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002).

Federal courts have original jurisdiction over cases which pose a "federal question," by "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (1980). Courts consider whether a case poses a federal question pursuant to the "well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-113 (1936)).

## DISCUSSION

The Federal Officer Removal Statute permits the removal of any civil or criminal action brought in state court when the defendant in the matter is:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The Fifth Circuit has explained that removal pursuant to this statute is meant to "ensure a federal forum in any case where a federal officer is entitled to raise a defense arising out of his official duties." *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998). The removing defendant has the burden of establishing the existence of federal jurisdiction. *Id.* at 397. Although courts are obligated to broadly construe removal jurisdiction under the Federal Officer Removal Statute, this "does not mean that the statute's broad language should be interpreted to imply limitless application." *Cole v. Northrop Grumman Ship Sys., Inc.*, No. 07-3049, 2008 WL 2651428, at *2 (E.D. La. July 7, 2008) (Fallon, J.) (citing *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 142, 127 S.Ct. 2301 (2007)).

In *Mesa v. California*, the United States Supreme Court established the test for removal pursuant to the Federal Officer Removal Statute. 489 U.S. 121, 131-32,

109 S.Ct. 959 (1989). According to *Mesa*, removal is mandated pursuant to the statute upon proof by the defendant seeking removal that: (1) it is a "person" under § 1442(a)(1); (2) it acted under the direction of a federal officer; (3) it has demonstrated a causal nexus between the plaintiff's claims and the defendant's actions performed under the color of a federal office; and (4) it can raise a federal defense to the plaintiff's claims. *Mesa*, 489 U.S. at 131-32, 109 S.Ct. 959; *Winters*, 149 F.3d at 398.

## I. Defendant is a "Person"

The first prong is satisfied: Defendant qualifies as a "person" within the meaning of the statute. The Supreme Court has long recognized that the removal statute also applies to private persons and corporate entities "'who lawfully assist' the federal officer 'in the performance of his official duty.'" *Watson*, 551 U.S. at 151, 127 S.Ct. 2301 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600, 2 S.Ct. 636, 27 L.Ed. 574 (1883)). The current statute reflects this understanding with its "or any person acting under that officer" provision. 28 U.S.C. § 1442(a)(1). Moreover, the statute "creates federal jurisdiction even over cases brought against private parties if they are sued for conduct they committed under the direction of federal authorities and for which they have a colorable defense under federal law." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016); *see also Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 460–61 (5th Cir. 2016); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397–98 (5th Cir. 1998).

## II.    Defendant Acted Under the Direction of a Federal Officer

In determining whether a defendant acted under the direction of a federal officer, the requisite showing is more than just action under a federal officer's "general auspices" or within a regulated industry. *Overly v. Raybestos–Manhattan*, No. C–96–2853 SI, 1996 WL 532150, at *3 (N.D. Cal. Sept. 9, 1996). However, the Supreme Court has made clear that the words "acting under" are broad and are to be liberally construed, though their interpretation must be limited by the statute's "language, context, history, and purposes." *Watson*, 551 U.S. at 147, 127 S.Ct. 2301. "In this context, 'under' must refer to what the dictionaries describe as a relationship involving acting in a certain capacity, considered in relation to one holding a superior position or office, and typically includes subjection, guidance, or control." *Id.* at 143. "Precedent and statutory purpose also make clear that the private person's 'acting under' must involve an effort to assist, or to help carry out, the federal superior's duties or tasks." *Id.*

Here, Defendant has offered evidence of the Corps' intimate involvement with Defendant's implementation of traffic control measures for the Louisiana Avenue Project. Defendant asserts that as the project's general contractor, its contract with the Corps contains 710 pages of detailed specifications and 430 pages of detailed drawings or plans prepared by the Corps' selected design engineering firm. (Rec. Doc. 9 at 13). The Project specifications include a section specifically addressing "Traffic Control and Coordination," which is directly implicated by the allegations in Plaintiff's lawsuit. (Rec. Doc. 9-1). The contract with the Corps requires Defendant to

make certain submittals and resubmittals to the Corps regarding various components of work, mandating that Defendant outline precisely how it intends to perform the work in accordance with the plans and specifications set forth in the contract. (Rec. Doc. 9 at 13). Defendant asserts that it submitted eleven separate traffic control and coordination submittals and resubmittals to the Corps' Contracting Officer and Resident Engineer for the Project, John Fogarty. (Rec. Doc. 9 at 13). The Corps conducted detailed reviews of all submittals and no work could proceed on the traffic control systems until the submittals had been reviewed and approved by the Corps' Contracting Officer. (Rec. Doc. 9 at 13). The affidavit of Cameron Johnson, Defendant's Project Manager on the Louisiana Avenue Project, indicates that the Traffic Control Device Plan, which was prepared by the Corps' designer of record and used by Defendant, specified "the particular type of traffic control devices that [Defendant] was required to use (including signs, signals, lighting devices, flashers, markings, barricades, hand signaling devices, and other traffic control devices), as well as the precise location of every sign, signal, lighting device, flasher, marking, barricade, hand signaling device, and other traffic control device to be placed in the vicinity of the construction." (Rec. Doc. 16-1 at 2, 3). Mr. Johnson further attests that the Corps had to and did expressly approve all traffic-related submittals and modifications to the Traffic Control Device Plan implemented by Defendant, and Defendant fully complied with the plans and specifications and performed all work in accordance with the Corps-approved traffic control and coordination submittals. (Rec. Doc. 16-1 at 3). Finally, Mr. Johnson attests that the Corps' oversight of Defendant's

work was extensive. (Rec. Doc. 16-1 at 3). He asserts that the Corps maintained a daily presence on site and provided a Quality Assurance representative tasked with inspecting Defendant's work each day to ensure conformity with the plans, specifications, and Corps-approved submittals. Based on the foregoing, the Court finds that there is sufficient proof for the purpose of removal that Defendant's work on the Louisiana Avenue Project, including its implementation of traffic control measures, was performed at the direction of the Corps.

### III.     Defendant's Actions Share a Causal Nexus with Plaintiff's Claims

The third requirement of *Mesa* necessitates a showing that Defendant's actions performed under the color of a federal office share a causal nexus with Plaintiff's claims. "[Fifth Circuit] decisions indicate that detailed supervision and/or direction by a federal official or authority is sufficient to satisfy the causal nexus prong." *Williams v. Todd Shipyards Corp.*, 154 F.3d 416 (5th Cir. 1998). In the instant case, Plaintiff alleges that "[t]he cause of the accident was [Defendant's] negligent placement of traffic control signs on the roadbed at the intersection on the morning of April 7, 2017." (Rec. Doc. 7-1 at 1). Given the Corps' extensive oversight of the Project and its detailed plans and specifications regulating traffic control and coordination that effectively removed all critical design choices from Defendants' discretion, Defendant argues that it was acting pursuant to federal direction, and a direct causal nexus exists between Defendant's actions and Plaintiff's claims in the instant litigation. (Rec. Doc. 9 at 15). For the reasons set forth in Section II above, the Court agrees. To satisfy the requisite causal nexus, Defendant is not required to

produce evidence that the Corps directed it to place traffic control signs on the roadbed in the particular manner in which it did on the morning of April 7, 2017. Rather, it is sufficient that the evidence in its entirety demonstrates comprehensive and detailed direction and control by the Corps. *See Fureigh v. Sewerage & Water Board of New Orleans*, No. 04-1374, 2004 WL 1794524 at *3 (E.D. La. Aug. 10, 2004) (concluding that the causal nexus requirement was satisfied where the defendant contractor performed its work in compliance with government specifications)); *Shimon v. Sewerage & Water Board of New Orleans*, No. 05-1392, 2007 WL 4414709 at *4 (E.D. La. Dec. 24, 2007) (holding that causal nexus was satisfied where contractor demonstrated detailed and comprehensive project specifications and the Corp's acceptance of contractor's work)); *Crutchfield v. Sewerage & Water Board of New Orleans*, No. 13-4801, 2015 WL 1781663 at *2 (E.D. La. April 20, 2015) (finding a causal nexus based on showing that the Corps exercised direct and detailed control over contractor's activities throughout the project)).

## IV.    Defendant Has a Colorable Federal Defense

To establish jurisdiction under section 1442, the removing party only needs to present a *colorable* defense on the plaintiff's claims. *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). The defendant is not required "to win his case before he can have it removed." *Id.* (internal citation omitted). Likewise, the federal defense does not need to be "clearly sustainable" to satisfy the removal standard. *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (quoting *Jefferson City*, 527 U.S. at 432). The Supreme Court has not defined "colorable" in the context of section 1442, but it has

provided clarity about what constitutes a non-colorable federal defense. *Id.* at 790. A non-colorable federal defense is one that is "immaterial and made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous." *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 n.10 (2006)). Thus, a federal contractor defense is adequate for jurisdictional purposes when the removing party's entitlement to it "is subject to reasonable debate." *Crutchfield*, 829 F.3d at 375.

The only federal defense asserted by Defendant is the government contractor defense, which was first established by the Supreme Court in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) and then expanded in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). "That defense provides immunity to contractors for conduct that complies with the specifications of a federal contract." *Crutchfield*, 829 F.3d at 375. Immunity under the government contractor defense attaches if the defendant can establish that (1) the government approved reasonably precise specifications; (2) the equipment or work conformed to those specifications; and (3) the contractor warned the government about any dangers that were known to the contractor but not to the government." *Sewell v. Sewerage & Water Bd. of New Orleans*, No. CV 15-3117, 2016 WL 7385701, at *3 (E.D. La. Dec. 21, 2016), aff'd, 697 F. App'x 288 (5th Cir. 2017); *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 460 (5th Cir. 2010); *Wilde v. Huntington Ingalls, Inc.*, 616 Fed.Appx. 710, 715 (5th Cir. 2015).

### A. The Corps Approved Reasonably Precise Specifications

The first prong of the *Boyle* test has two requirements: reasonably precise specifications and government approval—"which together are intended to 'assure

that the design feature in question was considered by a Government officer, and not merely by the contractor itself.'" *Sewell*, 2016 WL 7385701, at *3 (quoting *Boyle*, 487 U.S. at 512). Reasonable precision requires "that the discretion over significant details and all critical design choices be exercised by the government." *Trevino v. General Dynamics*, 865 F.2d 1474, 1481 (5th Cir. 1989); *see also Kerstetter*, 210 F.3d at 438 (finding that specifications are reasonably precise "as long as the specifications address, in reasonable detail, the product design feature, alleged to be defective."). This inquiry focuses not on the designer of the offending feature of the project, but rather on the detail of the specifications presented to the government for approval. *See In re Aircraft Crash Litigation Frederick, Maryland*, 752 F.Supp. 1326, 1341-42 (S.D. Ohio 1990) aff'd, *Darling v. Boeing Co.*, 935 F.2d 269 (6th Cir. 1991). Likewise, "[t]he government need not prepare the specifications to be considered to have approved them." *Kerstetter*, 210 F.3d at 435 (citing *Trevino*, 865 F.2d at 1480 (5th Cir. 1989)). "Government approval simply requires meaningful, substantive review of the specifications." *Sewell*, 2016 WL 7385701, at *3; *see also Trevino*, 865 F.2d at 1480, 1486; *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 335-36 (5th Cir. 1991) (explaining that the government's substantive review of specifications is sufficient, but rubber stamping is not).

In the instant case, the affidavit of Defendant's Project Manager, Cameron Johnson, indicates that "[t]he plans and specifications administered by [the Corps] were reasonably precise." (Rec. Doc. 16-1 at 2). This attestation is supported by evidence that Defendant's contract with the Corps contains 710 pages of detailed

specifications prepared by the Corps' selected design engineering firm, as well as 430 pages of detailed drawings or plans also prepared by the designer. (Rec. Doc. 9 at 13). Additionally, Defendant produced the portion of its contract with the Corps governing traffic control and coordination. (*See* Rec. Doc. 9-1). This document outlines detailed specifications pertaining to traffic control and coordination, submittals, the Traffic Control Device Plan, and road closure, as well as the use of barricades, danger, warning, and detour signs. Based on the foregoing, the Court finds that Defendant has shown that the plans and specifications governing traffic control and coordination are reasonably precise. The Court also finds that the record demonstrates that the Corps meaningfully reviewed and approved the traffic-related specifications. Mr. Johnson attests that the Corps conducted a detailed, substantive review of and approved all traffic-related submittals and modifications to the Traffic Control Device Plan. (Rec. Doc. 16-1 at 3). He further attests that the Corps' substantive review process "involved a continuous back and forth between [Defendant] and [the Corps], often times requiring [Defendant] to provide re-submittals on the same component of work until [the Corps] ultimately approved the submittal." Based on the foregoing, Defendant has satisfied the first *Boyle* prong.

### B. Defendant's Work Conformed to the Reasonably Precise Specifications Approved by the Corps

Like the first prong, the second prong of the *Boyle* test requiring a government contractor to have performed the work in accordance with the approved specifications "serve[s] to locate the exercise of discretion in the government." *Trevino*, 865 F.2d at

1481. Conformity may be satisfied by proof that "the government supervised and controlled the implementation of [the government approved reasonably precise] specifications," *Levy v. Phillips and Jordan, Inc.*, No. 08-5065, 2009 WL 2922057, *2 (E.D. La. Sept. 9, 2009). However, a breach of "some general admonition against an unwanted condition" does not negate a showing of a contractor's conformity with reasonably precise specifications. *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 703 (5th Cir. 1993) (quoting *Harduval v. General Dynamic Corp.*, 878 F.2d 1311, 1319 n.3 (11th Cir. 1989)) (precatory contract terms "represent little more than hopes of participants that the project on which they are about to embark will turn out well").

Here, Defendant has produced evidence that the Corps' oversight on the Louisiana Avenue Project was extensive and steady. Mr. Johnson's affidavit indicates that the Corps engaged in extensive oversight of the Project by maintaining a daily presence onsite and providing a Quality Assurance representative to inspect Defendant's work each day to ensure conformity with the plans, specifications, and Corps-approved submittals. (Rec. Doc. 16-1 at 3). These monitoring efforts not only lessen the concern that Defendant used its own discretion in lieu of the Corps' reasonably precise specifications, but also constitute persuasive evidence of conformity under precedent set by the Fifth Circuit in *Kerstetter. See Sewell*, 2016 WL 7385701, at *4. Moreover, Defendant has produced proof that the Corps approved Defendant's work. Specifically, Mr. Johnson attests that the Corps "expressly approved all traffic-related submittals and modifications to the [Traffic Control

Device Plan] implemented by [Defendant] on the Project." (Rec. Doc. 16-1 at 3).

Accordingly, the Court finds that the second *Boyle* prong is satisfied.

### C. Defendant Was Unaware of Reasons Not Known to the Corps That Would Make Implementation of the Reasonably Precise Specifications Unsafe or Unreasonable

The final prong of the *Boyle* test requires that the contractor was "unaware of reasons not known to the government that would make the implementation of specifications unsafe or unreasonable." *Levy*, 2009 WL 2922057 at *2. Defendant asserts that the Corps had knowledge of the risks associated with the construction activities undertaken by Defendant, including the risks associated with implementation of the traffic control measures necessitated by the project. (Rec. Doc. 9 at 20). Defendant emphasizes that the Corps' knowledge of the risks is bolstered by the fact that the Louisiana Avenue Project was the last of seven SELA projects that the Corps had completed in Uptown New Orleans. (Rec. Doc. 9 at 20). Additionally, Mr. Johnson's affidavit attests that "[Defendant] did not know of any dangers relating to the traffic control and coordination plans, specifications, or [Corps-approved] submittals that were not known to [the Corps]." (Rec. Doc. 16-1 at 3). Considering the foregoing and the lack of competent evidence that Defendant failed to report a dangerous condition that was unforeseen by the Corps, the Court concludes that Defendant has established the last prong of *Boyle*. Accordingly, Defendant has demonstrated the existence of a colorable defense based on government contractor immunity. Given that Defendant has also satisfied all of the elements of *Mesa*, removal pursuant to the Federal Officer Removal Statute is proper.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion to Remand* **(Rec. Doc. 7)** is **DENIED**.

New Orleans, Louisiana, this 4th day of April, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE