MARYBETH GUARISCO                           CIVIL ACTION

VERSUS                                      NO: 18-7514

BOH BROTHERS                                SECTION: "J"(3)
CONSTRUCTION CO., LLC AND
ILLINOIS NATIONAL
INSURANCE COMPANY

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment on the Grounds of Government Contractor Immunity* **(Rec. Doc. 45)** and a *Motion for Summary Judgment and Sanctions for Spoliation* **(Rec. Doc. 52)** filed by defendant, Boh Bros Construction Co. LLC, ("Boh"), oppositions thereto (Rec. Doc. 78 and 82) filed by Plaintiff, Marybeth Guarisco, and replies (Rec. Doc. 95 and 93) filed by Boh. Apart from cites to the specific record document when appropriate, the Court will treat defendant's two motions for summary judgment ("MSJ") as one motion articulating alternative legal theories. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds the MSJ should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The backdrop of this case involves the Southeast Louisiana Drainage Project ("SELA"), a federally-funded enterprise cosponsored by the Sewerage and Water Board of New Orleans ("SWB") and the United States Army Corps of Engineers ("the Corps"). SELA involves extensive construction at multiple sites throughout Orleans,

Jefferson, and St. Tammany parishes and is designed to improve flood control and drainage in urban areas. On January 23, 1997, the federal government entered into a Project Cooperation Agreement with SWB outlining the roles and responsibilities of the Government and SWB during construction of the Orleans Parish SELA Project segments. The Agreement specifically states that "…all work on the Project … shall be exclusively within the control of the Government." Boh asserts that on November 26, 2013, the Corps issued Solicitation No. W912P8-14-R-001 seeking competitive bids for the Louisiana Avenue SELA Project segment ("Project"). Boh was the successful bidder selected by the Corps to act as general contractor on the Project. (*See* Rec. Doc. 1-4).

The instant dispute arises out of an automobile accident that occurred on April 7, 2017 at the intersection of Louisiana Avenue and Baronne Street in New Orleans, Louisiana ("the Intersection")—at the site of the Project. Plaintiff alleges that Boh converted Louisiana Avenue's two river-bound lanes into a two-way street and negligently placed traffic control signs on the roadbed at the intersection, thereby causing Plaintiff's accident. On April 2, 2018, Plaintiff filed suit against Boh and its insurance carrier, Illinois National Insurance Company, in the Civil District Court for the Parish of Orleans. Boh timely removed the case under Title 28 U.S.C. § 1442. On April 4, 2019, this Court issued an order and reasons denying Plaintiff's Motion to Remand (Rec. Doc. 28), finding in part that Boh had a colorable defense for government contract immunity.

After copious procedural disputes between the parties, Boh has moved for summary judgment on two grounds. First, Boh argues that it is entitled to government contractor immunity ("GCI"), the same defense this Court recognized as colorable in its order denying the motion to remand. Second, Boh argues that Plaintiff has not provided facts sufficient to prove the negligence elements of duty, breach, or causation. Boh further asks this Court to impose sanctions on Plaintiff for spoliation of evidence, alleging Plaintiff intentionally altered and deleted photos at the accident to better support her claim.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citations omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

### **I. MR. FOGERTY'S TESTIMONY IS ADMISSIBLE AS SUMMARY JUDGMENT EVIDENCE**

As a preliminary matter, the Court addresses Plaintiff's contention that the deposition testimony of John Fogerty, the Corps' resident engineer on the project, is inadmissible under Federal Rule of Civil Procedure 32(a). Fogerty offered the

testimony in support of Boh's GCI claim in the *Sewell* litigation. 2016 WL 7385701. The *Sewell* litigation arose from several lawsuits filed by businesses and homeowners adjacent to the Project, all asserting various claims against the SWB and assorted contractors, including Boh. *Id.* Rule 32(a) states that a deposition from an earlier suit may only be used in a later action if it "involve[s] the same subject matter between the same parties, or their representatives or successors in interest." The parties hotly dispute whether Plaintiff constitutes a "successor in interest" to the plaintiffs who sued Boh in the *Sewell* litigation.

The admissibility of evidence in a MSJ is not governed by Rule 32, however, but rather Rule 56. Rule 56 requires only that summary judgment evidence "be capable of being 'presented in a form that would be admissible in evidence'" at trial, not that it actually be presented in an admissible form. Therefore, as long as there is no reason Boh could not depose Mr. Fogerty for this case, or produce him at trial, then his deposition testimony from prior litigation constitutes competent MSJ evidence. *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). Numerous other district courts in this Circuit have found that depositions failing the Rule 32 standard "may still be considered under Rule 56 summary judgment purposes as if it were a sworn affidavit." *New York Marine and General Insurance Company v. Cardona*, No. 17-246 2018 WL 6588582 *3 (W.D. Tex. 2018) (citing *In re Ward*, 558 B.R. 771, 779 (Bankr. N.D. Tex. 2016); *Bingham v. Jefferson County, Tex.*, No. 1:11-CV-48, 2013 WL 1312563, at *1 (E.D. Tex. Mar. 1, 2013), *report and recommendation adopted as modified*, No. 1:11-CV-48, 2013 WL 1312014 (E.D. Tex.

Mar. 27, 2013) (citing *Vondriska v. Cugno*, 368 F. App'x 7, 8–9 (11th Cir. 2010) (unpublished); *see also Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993). Indeed, the "weight of authority is that depositions can be the equivalent of affidavits and are therefore admissible at the summary judgment stage." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014).

Consequently, as there does not appear to be any reason Mr. Fogerty's testimony is not capable of being presented in an admissible form, the Court finds that it may consider Mr. Fogerty's deposition in the *Sewell* litigation as an affidavit at this stage in the proceedings.

## II. GOVERNMENT CONTRACTOR IMMUNITY

GCI is an affirmative defense. As such, Boh must present evidence showing it is entitled to GCI. If it does so, the burden shifts to Plaintiff to raise a genuine issue of material fact regarding the GCI. *See Smith v. Xerox Corp*, 866 F.2d 135 (5th. Cir. 1989).

Boh argues at length that the Court should grant its GCI claim under the "law of the case" doctrine (Rec. Doc. 45 at 13). The "law of the case" doctrine states "that when a court decides on a rule of law, that decision should govern the same issue in subsequent stages of the case." *Lonatro v. Orleans Levee Dist.*, CIV.A. 11-357, 2011 WL 4460187 at *3 (E.D. La. Sept. 2011). Here, the rule of law previously decided by this Court is that Boh had a *colorable* claim for CCI sufficient to justify removal. The standard of proof required to find a claim is colorable is less than the standard required to succeed on a MSJ. *See Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir.

2017); *see also. Jefferson Cty., Ala. v. Acker,* 527 U.S. 423, 431 (1999) (a defendant need not "win his case before he can have it removed."). Nonetheless, although the "law of the case" doctrine does not unequivocally entitle Boh to GCI, the evidence and analysis used by the Court when ruling on the motion to remand may still be applicable to the instant MSJ.

GCI was first established by the Supreme Court in *Yearsley v. W.A. Ross Constr. Co.,* 309 U.S. 18 (1940), and then expanded in *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988). "That defense provides immunity to contractors for conduct that complies with the specifications of a federal contract." *Crutchfield v. Sewerage and Water Board of New Orleans*, 829 F.3d 370 at 375. Immunity under the government contractor defense attaches if the defendant can establish that (1) the government approved reasonably precise specifications; (2) the equipment or work conformed to those specifications; and (3) the contractor warned the government about any dangers that were known to the contractor but not to the government. *Sewell v. Sewerage & Water Bd. of New Orleans*, No. CV 15-3117, 2016 WL 7385701, at *3 (E.D. La. Dec. 21, 2016), *aff'd,* 697 F. App'x 288 (5th Cir. 2017); *In re Katrina Canal Breaches Litig.,* 620 F.3d 455, 460 (5th Cir. 2010); *Wilde v. Huntington Ingalls, Inc.,* 616 Fed.Appx. 710, 715 (5th Cir. 2015).

## A. The Government Approved Reasonably Precise Specifications

The first prong of the *Boyle* test has two requirements: reasonably precise specifications and government approval— "which together are intended to 'assure that the design feature in question was considered by a Government officer, and not

merely by the contractor itself.'" *Sewell*, 2016 WL 7385701, at *3 (quoting *Boyle*, 487 U.S. at 512). Reasonable precision requires "that the discretion over significant details and all critical design choices be exercised by the government." *Trevino v. General Dynamics*, 865 F.2d 1474, 1481 (5th Cir. 1989); *see also Kerstetter v. Pacific Scientific Co.*, 210 F.3d 431, 435 at 438 (finding that specifications are reasonably precise "as long as the specifications address, in reasonable detail, the product design feature, alleged to be defective."). This inquiry focuses not on the designer of the offending feature of the project, but rather on the detail of the specifications presented to the government for approval. *See In re Aircraft Crash Litigation Frederick, Maryland*, 752 F.Supp. 1326, 1341-42 (S.D. Ohio 1990) aff'd, *Darling v. Boeing Co.*, 935 F.2d 269 (6th Cir. 1991). Likewise, "[t]he government need not prepare the specifications to be considered to have approved them." *Kerstetter*, 210 F.3d at 435 (citing *Trevino*, 865 F.2d at 1480 (5th Cir. 1989)). "Government approval simply requires meaningful, substantive review of the specifications." *Sewell*, 2016 WL 7385701, at *3; *see also Trevino*, 865 F.2d at 1480, 1486; *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 335-36 (5th Cir. 1991) (explaining that the government's substantive review of specifications is sufficient, but rubber stamping is not).

Here, Boh has provided the affidavit of its Project Manager, Cameron Johnson, which states that the "plans and specifications administered by the corps were reasonably precise." (Rec. Doc. 45-2). This attestation is supported by the portion of the contract with the Corps produced by Boh governing traffic control and coordination. (Rec. Doc. 9-1). This document outlines detailed specifications

pertaining to traffic control and coordination, submittals, the Traffic Control Device Plan ("TCDP"), and road closure, as well as the use of barricades, danger, warning, and detour signs. Furthermore, the TCDP itself provides detailed and precise traffic specifications, such as the exact placement of traffic signs and the method of properly conducting lane closures. (Rec. Doc. 95-3). Boh was also bound by supplementary statutes and regulations, such as the requirement that all signage conform to the Manual on Uniform Traffic Control Devices. The Court finds that taken cumulatively, evidence provided by Boh sufficiently shows that the plans and specifications governing traffic control were reasonably precise.

The Court further finds that the Corps meaningfully reviewed and approved the traffic specifications. Mr. Johnson attests that the Corps conducted a detailed, substantive review of and approved all traffic-related submittals and modifications to the TDCP (Rec. Doc. 16-1 at 3). The level of review process routinely consisted of "continuous back and forth between [Boh] and [the Corps], often times requiring [Boh] to provide re-submittals on the same component of work until [the Corps] ultimately approved the submittal." *Id.*

The deposition of John Fogerty, the Resident Engineer and Administrative Contracting Officer for the Corps on the entire Project, supports this finding as well. Mr. Fogerty testified that Boh could not commence work until the Corps approved Boh traffic plans and specifications, and that the Corps review of the plans was "substantive." (Rec. Doc. 95-6 at 1549-53). Based on the foregoing, the Court finds that Boh has produced enough evidence to satisfy the first *Boyle* prong.

Having found that Boh satisfied its evidentiary obligations with regards to the first *Boyle* prong, the burden then shifts to Plaintiff to prove the existence of a genuine issue of material fact on this issue.

Plaintiff's opposition to Boh's MSJ is centered on two primary arguments: (1), the TDCP approved by the Corps shows the Intersection as closed, but it was open at the time of the accident; and (2) Boh did not use the template TDCP provided by the Corps, but instead created ITS own. In addition to using these assertions to claim Boh's traffic control plans do not satisfy the requirements of the first *Boyle* prong, Plaintiff also attempts to discredit the testimony of Mr. Johnson by claiming these facts contradict his statements and make him an unreliable witness, thereby undermining a substantial amount of Boh's proffered evidence.

The Court finds that Plaintiff has failed to create a genuine issue of material fact with regards to the first *Boyle* prong because Plaintiff's assertions constitute neither disputes nor material facts. First, Boh readily concedes the TCDP in effect at the time of the accident shows the Intersection as closed, despite the Intersection clearly being open the day of the accident. (Rec. Doc. 95 at 7).[1] What Plaintiff asserts as a genuine dispute of material fact is instead just a misunderstanding of the role the TDCP plays in setting the traffic specifications for the Project. The TDCP is not intended to be an exact representation of the layout of the Project at every second of

---

[1] The TDCP in effect at the time of the accident was the thirteenth out of seventeen TDCP's submitted by contractors and approved by the Corps throughout the life of SELA. As SELA shifted and changed locations, new TDCP's were needed. Work could not commence until the TDCP for that specific portion of the project was approved. The thirteenth TDCP was approved by the Corps on February 6, 2017.

every day. As stated incontrovertibly in the testimony of Boh corporate representative Anthony Aziz, "Not every intersection is shown as closed, not every intersection is shown as open…[the] key is, you can't show every one closed because then you're — then you would be deficient with respect to the contract obligation of keeping no more than two consecutive intersections closed." (Rec. Doc. 95-2 at 10-13).

Rather, the TDCP functions as a "typical layout of a closed intersection," that just happens to show the Intersection as the typical closed intersection. *Id.* The record indicates that it was extremely common for intersections and streets to be open or closed depending on the progress of the construction. (Rec. Doc. 95-5). The TDCP represents the reasonably precise traffic control measures for Boh to take whenever it opened an intersection as needed during construction. It would be the height of inefficiency to require a government contractor to obtain "substantive review" of every intersection opened or closed during a construction project. The contractor must be able to do so quickly to avoid bringing traffic to a halt. Therefore, there is no actual "dispute" over the open versus closed nature of the Baronne Street intersection, nor is it a material fact on the issue of GCI.

Second, it is clear from the record that Boh used the TDCP provided by the Corps as the basis for its final, modified TDCP. Not only did the pre-approved Corps TDCP act as the template for the modified TDCP, but the Corps approved the modified TDCP created by Boh. (Rec. Doc. 45-2, Exhibit A and Rec. Doc. 95, Exhibit F). Thus, the "issue" of whether Boh ultimately implemented the template TDCP or

the modified TDCP is irrelevant, because either way the Corps' approval satisfies the government approval requirements of the first *Boyle* prong.

For the foregoing reasons, Plaintiff has not successfully created a genuine issue of material fact rebutting Boh's evidence that it had governmentally approved, reasonably precise traffic control specifications on the Project.

## B. Defendant's Work Conformed to the Specifications

Like the first prong, the second prong of the *Boyle* test requiring a government contractor to have performed the work in accordance with the approved specifications "serve[s] to locate the exercise of discretion in the government." *Trevino*, 865 F.2d at 1481. Conformity may be satisfied by proof that "the government supervised and controlled the implementation of [the government approved reasonably precise] specifications," *Levy v. Phillips and Jordan, Inc.*, No. 08-5065, 2009 WL 2922057, *2 (E.D. La. Sept. 9, 2009). However, a breach of "some general admonition against an unwanted condition" does not negate a showing of a contractor's conformity with reasonably precise specifications. *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 703 (5th Cir. 1993) (quoting *Harduval v. General Dynamic Corp.*, 878 F.2d 1311, 1319 n.3 (11th Cir. 1989)) (precatory contract terms "represent little more than hopes of participants that the project on which they are about to embark will turn out well").

Here, Boh has produced evidence that the Corps' oversight on the Louisiana Avenue Project was extensive and steady. Mr. Johnson's affidavit indicates that the Corps engaged in extensive oversight of the Project by maintaining a daily presence onsite and providing a Quality Assurance representative to inspect Boh's work each

day to ensure conformity with the plans, specifications, and Corps-approved submittals. (Rec. Doc. 45-1 at 3). Mr. Johnson's affidavit is supported by the performance evaluations conducted by the Corps. The performance evaluation for the relevant time frame states that "quality control inspections are performed by the [quality control] team every day," and "[q]uality control is adapted based on all Government comments." (Rec. Doc. 45-5 at 10).

These monitoring efforts not only lessen the concern that Boh used its own discretion in lieu of the Corps' reasonably precise specifications, but also constitute persuasive evidence of conformity under precedent set by the Fifth Circuit in *Kerstetter*. *See Sewell*, 2016 WL 7385701, at *4. Moreover, Defendant has produced proof that the Corps not only monitored, but approved Defendant's work. Specifically, Mr. Johnson attests that the Corps "expressly approved all traffic-related submittals and modifications to the [Traffic Control Device Plan] implemented by [Defendant] on the Project." (Rec. Doc. 45-1 at 3). The relevant performance evaluation states "Boh Bros has been effective in securing the worksite, establishing traffic controls, and constructing safe pedestrian access on a heavy urban project site." (Rec. Doc. 45-5 at 11).[2]

Finally, the affidavits of Mr. Johnson and Mr. Fogarty, taken together, provide evidence that Boh was not to be paid unless its work conformed to the Corps'

---

[2] The Corps conducted four evaluations throughout the life of the Project. One at 14% completion, a second at 75% completion, a third at 90% completion, and a final at 100% completion. The performance evaluations were all conducted by John Fogerty, the Corps' resident engineer on the project. The relevant evaluation here is evaluation #3, which was conducted at the 90% completion stage.

requirements. Here, Boh has been paid in full by the Corps (Rec. Doc. 45-1). Courts have consistently held that government payment to the contractor without set off constitutes "compelling proof" that the contractor conformed to specifications. *See Sewell*, 2016 WL 7385701 at *4 (citing, *e.g. Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th. Cir. 2001).

For the foregoing reasons, the Court finds that Boh has submitted sufficient evidence to entitle it to summary judgment on the second *Boyle* prong. The burden subsequently shifts to Plaintiff to create a genuine issue of material fact.

Plaintiff has provided no facts to counter Boh's assertion that its work conformed to the Corps' requirements. Rather, Plaintiff again relies on attacking Boh's evidence, particularly Mr. Johnson's affidavit, by highlighting the same alleged inconsistencies used to attack Boh's evidence on *Boyle* prong one. For the reasons stated in Part A, the alleged inconsistencies either do not exist, or fail to create a genuine dispute as to a material element of *Boyle*'s second prong.

Plaintiff correctly states that Mr. Fogerty's deposition was taken in 2016, well before the accident in question occurred, and therefore his testimony cannot be used as direct evidence for the proposition Boh was working on the Project in conformity with Corps specifications in 2017. Nevertheless, Mr. Fogerty's testimony is far from useless. Mr. Fogerty's testimony establishes that Project performance evaluations conducted by the Corps account for traffic control (Rec. Doc. 45-7 at 2). It also states the standard Corps practice that payment is not made unless the work has been reviewed by the Corps and conforms to specifications (Rec. Doc. 45-7 at 3). These

general truths about the functioning of the Project are not only useful in establishing the level of control the Corps had over the Project, but they also reinforce Mr. Johnson's claims that the Corps reviewed and oversaw the Project in detail.

## C. Defendant Was Unaware of Reasons Not Known to the Corps That Would Make Implementation of the Reasonably Precise Specifications Unsafe or Unreasonable

The final prong of the *Boyle* test requires that the contractor was "unaware of reasons not known to the government that would make the implementation of specifications unsafe or unreasonable." *Levy*, 2009 WL 2922057 at *2. A government contractor is "only responsible for warning the government of dangers about which it has *actual* knowledge," not "*constructive* knowledge." *Miller*, 275 F.3d 414 at 422 (citing *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1487 (5th. Cir. 1989). Mr. Johnson's affidavit attests that "[Defendant] did not know of any dangers relating to the traffic control and coordination plans, specifications, or [Corps-approved] submittals that were not known to [the Corps]." (Rec. Doc. 45-1 at 3). Thus, via its corporate representative, Boh, has provided sufficient MSJ evidence it had no knowledge of any dangers unknown to the Corps.

Furthermore, Defendant asserts that the Corps had knowledge of the risks associated with the construction activities undertaken by Defendant, including the risks associated with implementation of the traffic control measures necessitated by the project. (Rec. Doc. 45 at 23). Defendant emphasizes that the Corps' knowledge of the risks is bolstered by the fact that the Louisiana Avenue Project was the last of

seven SELA projects that the Corps had completed in Uptown New Orleans. *Id.* Plaintiff provides no evidence anyone affiliated with Boh had any prior knowledge of unknown or unsafe risks associated with the reasonably precise specifications. Plaintiff's sole argument is Mr. Johnson's, affidavit is insufficient because he does not have personal knowledge of Boh's lack of awareness. The Court is not persuaded. Once Mr. Johnson testified as to Boh's lack of subjective knowledge, the burden shifted to Plaintiff to provide some shred of evidence that Mr. Johnson's testimony was incorrect. Plaintiff failed to do so.

Considering the foregoing and the lack of competent evidence that Defendant failed to report a dangerous condition that was unforeseen by the Corps, the Court concludes that Defendant has established the last prong of *Boyle*.

### D. The Sewell Litigation is Persuasive

In *Sewell* v. *Sewerage & Water Board of New Orleans*, eight consolidated lawsuits were brought by owners of homes and businesses adjacent to the Project against the Sewerage & Water Board of New Orleans. 2016 WL 7385701. After being brought into the litigation as a third-party defendant, Boh moved for summary judgment on its defense of GCI. The *Sewell* court, in granting summary judgment in Boh's favor, noted "reasonably precise specifications governed….application of traffic mitigation measures." *Id.* at 3. The court further noted that "in the absence of conflicting evidence, the government's written acceptance of a contractor's work constitutes compelling proof of conformity." *Id.* at *4 (citing *Miller*, 275 F.3d 420).

The Court finds the decision of the court in *Sewell* persuasive regarding Plaintiff's argument that Boh is not entitled to GCI because the SELA contract "mandated that Boh exercise its own discretion" with regards to traffic control (Rec. Doc. 78-2 at 30). The court in *Sewell* rejected any contention that the SELA contract allowed Boh the level of discretion needed to defeat GCI. Precatory, or generalized, contract language that could be interpreted as imparting a modicum of discretion to Boh is insufficient to defeat the more detailed requirements and supervision detailed in the SELA contract and subsequent documents. *See Sewell* 2016 WL 7385701 (citing *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 703 (5th Cir. 1993) (quoting *Harduval v. General Dynamic Corp.*, 878 F.2d 1311, 1319 n.3 (11th. Cir. 1989)) (precatory contract terms "represent little more than hopes of participants that the project on which they are about to embark will turn out well.").

Although not in any way binding on the Court, the *Sewell* decision is nonetheless instructive in its interpretation of certain provisions of the SELA contract, and the Court agrees with the decision that the SELA contract does not allow Boh discretion sufficient to defeat GCI.

## III.  SANCTIONS FOR SPOLIATION

As the Court finds Boh entitled to summary judgment via its claim of GCI, it is unnecessary to address Boh's claim that Plaintiff's suit for negligence fails as a matter of law. There remains, however, Boh's claim for sanctions for spoliation.

Spoliation is the "destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir.2015) A district court has

broad discretion to use its inherent powers to administer sanctions for spoliation. *Orchestratehr, Inc. v. Trombetta*, 178 F.Supp.3d 476 (N.D. Texas Apr. 2018) (citing *Hodge v. Wal–Mart Stores*, Inc., 360 F.3d 446, 449 (4th Cir.2004). The Court's inherent authority is limited to "instances of bad faith or willful abuse of the judicial process." *Pressey v. Patterson,* 898 F.2d 1018 (5th Cir.1990).

Boh contends that Plaintiff willfully spoliated evidence by altering a photograph to delete evidence of a two-way street sign and deleting up to 22 videos and photographs entirely.[3] Boh supports its contention via the affidavit of Dr. Gavin Manes, an expert computer scientist retained by Boh to prove Plaintiff deleted and altered the photographs. (Rec. Doc. 93-1). Dr. Manes' affidavit emphatically states that photos of the accident in the Plaintiff's possession were deliberately deleted or altered. *Id.* Boh's contention is further supported by Plaintiff's own Facebook post showing the picture in its unaltered condition containing the two-way street sign. (Rec. Doc. 52-1 at 11). As punishment for this conduct, Boh asks the Court to impose sanctions on Plaintiff in the form of attorneys' fees and costs. Plaintiff neither denies Boh's allegations nor provides evidence of a plausible, alternative reason the photographs were altered and deleted. (Rec. Doc. 82 at 19).

Boh's request is complicated by the digital nature of the evidence at issue. Although spoliation of digital evidence is ostensibly addressed in Fed. R. Civ. Pro. 37(e), the plain language of Rule 37(e) only applies to cases where the digital evidence

---

[3] Plaintiff's claim is largely premised on Boh's alleged failure to properly place a two-way sign at the intersection of Baronne Street and Lafayette Street. The primary picture at the center of Boh's spoliation claim is a picture taken the day of the accident by the Plaintiff showing that a two-way sign was in position at the time of the accident.

is irrevocably lost.[4] Here, it is undisputed that the photographs are not lost. Boh is in actual possession of the unaltered photograph showing the two-way sign. (Rec. Doc. 52-1 at 11). Boh obtained the picture from a Facebook post made by Plaintiff after the accident. Regarding the alleged deleted videos or photographs, Boh admits they may still be recovered through additional discovery. (Rec. Doc. 93 at 8-9). Thus, it would be premature for the Court to find Rule 37(e) applies here, as there is no proof any of the digital evidence at issue is permanently lost.

Nevertheless, that does not end the Court's inquiry into this matter. Because the power to sanction spoliation is an inherent power of the Court, that power may be invoked even in the presence of procedural rules sanctioning the same conduct. *Chambers v. NASCO, Inc.* 501 U.S. 32 (1991); *see also Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1131–32 (9th Cir.2015) ("This inherent power is not limited by overlapping statutes or rules."). *A fortiori*, the Court's inherent power is certainly not restricted when the procedural rule does not sanction the precise conduct at issue—Plaintiff's unsuccessful attempt to destroy or alter evidence.

To allow a party to avoid sanctions merely because the attempt to destroy evidence was unsuccessful would be to ignore one of the primary goals of sanctioning spoliative conduct. "A party's falsification of evidence and attempted destruction of

---

[4] Rule 37(e) states if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

authentic, competing information threatens the integrity of judicial proceedings even if the authentic evidence is not successfully deleted." *CAT3, LLC v. Black Lineage, Inc.* 164 F.Supp.3d 488 (S.D. New York Jan. 2016).

Having established that the Court possesses the inherent power to sanction spoliative conduct, it must also be noted that inherent powers should be exercised with restraint and discretion. *Chambers*, 501 U.S. at 44. The rule in this Circuit is that "courts have a duty to impose the least severe sanction that is sufficient to deter future conduct." *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993).

Here, the Court finds that Plaintiff intentionally altered evidence to make it appear more favorable to her case. The Court bases its finding on the affidavit of Dr. Gavin Manes and Plaintiff's own Facebook post, as well as the lack of rebuttal evidence presented by Plaintiff. The Court further finds that Boh has been prejudiced by having to employ Dr. Manes as an expert witness. The Court concludes that the least severe sanction possible to deter future similar conduct is to impose Dr. Manes' expert fees as a sanction on the plaintiff.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Boh Bro's *Motion for Summary Judgment on the Issue of Government Contractor Immunity* **(Rec. Doc. 45)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Boh Bro's *Motion for Sanctions for Spoliation of Evidence* **(Rec. Doc. 52)** is **GRANTED**, and Plaintiff shall reimburse

Boh Bro's for the expert fees of Dr. Manes.  Such reimbursement shall be made within

21 days from the date of this order.

**IT IS FURTHER ORDERED** that Boh Bro's *Motion to Strike Witnesses and*

*Exhibit List* **(Rec. Doc. 35)** is **DENIED as MOOT**.

New Orleans, Louisiana this 3rd day of October, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE